UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALEXANDRINA POE,

           Plaintiff,

-v-

THE CITY OF NEW YORK; New York City Police Department ("NYPD") Officer ("P.O.") JOSE ANDINO (Shield No. 19972); P.O. MICHAEL SAFOSCHNIK (Shield No. 4962); Lieutenant SEAN WILLIAMS; Sergeant MARINA GADLIKINA (Shield No. 835); P.O. STEVEN TRIGLIO (Shield No. 11532), in their individual capacities,

           Defendants.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**13-CV- 5258 (ERK) (RER)**

---

Plaintiff ALEXANDRINA POE, through her attorney ROBERT M. QUACKENBUSH of Rankin & Taylor, PLLC, as and for her first amended complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983 and pendant state law claims.

2. Plaintiff ALEXANDRINA POE's rights were violated when members of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis conducted an unlawful entry into plaintiff's home, a false arrest, a use of excessive force, and a malicious prosecution. By reason of defendants' actions, including their unreasonable and unlawful seizure of her person and property, plaintiff was deprived of her constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a) (3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. Plaintiff ALEXANDRINA POE satisfied all administrative requirements to suit under New York General Municipal Law insofar as she filed a Notice of Claim on February 11, 2013, appeared for a hearing on July 22, 2013, and waited the time required by statute before filing the instant suit. Thus, this Court has supplemental jurisdiction over plaintiff's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

7. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

8. Plaintiff ALEXANDRINA POE ("POE") was at all times relevant to this action a resident of Kings County in the State of New York.

9. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a

police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

10. New York City Police Department ("NYPD") Officer ("P.O.") JOSE ANDINO (Shield No. 19972); P.O. MICHAEL SAFOSCHNIK (Shield No. 4962); Lieutenant SEAN WILLIAMS; Sergeant MARINA GADLIKINA (Shield No. 835); and P.O. STEVEN TRIGLIO (Shield No. 11532), (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees, and agents of the NYPD.

11. The individual defendants are being sued herein in their individual capacities.

12. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

13. On November 13, 2012 at approximately 9:45 a.m., plaintiff POE was arrested without probable cause and injured by the individual defendants when they gained entrance to her apartment at 417 Morgan Avenue in the County of Kings in the State of New York by falsely stating they held a warrant to enter, charged her apartment and held a gun to her head, and unlawfully arrested her.

14. At the time and place described supra, plaintiff POE had been at home with her mother and nephew when she responded to a knock at the door.

15. P.O. SAFOSCHNIK and another individual defendant grabbed hold of plaintiff POE, pushed her back against the kitchen wall and defendant P.O. SAFOSCHNIK pointed a gun to her face.

16. P.O. SAFOSCHNIK and another individual defendant continued to detain plaintiff POE against the wall with a gun pointed to her face for approximately 25 minutes, causing injury to her shoulder.

17. During this time, the other individual defendants harassed plaintiff POE's family members without cause or justification and went through the apartment upturning furniture, rifling through belongings and destroying property.

18. Subsequently, plaintiff POE and her family members discovered jewelry missing.

19. Without cause or justification, and at the direction of Lieutenant WILLIAMS, P.O. SAFOSCHNIK then placed plaintiff POE in handcuffs with such excessive force as to cause bruising to plaintiff's wrists and, upon information and belief, to cause nerve damage to plaintiff POE's left index finger.

20. P.O. SAFOSCHNIK and another individual defendant then transported plaintiff POE to the NYPD 94th Precinct stationhouse.

21. Upon information and belief, while in custody at the 94th Precinct stationhouse for approximately ten (10) hours, plaintiff POE requested access to a bathroom four (4) times and defendants refused each of her requests.

22. Upon information and belief, defendants Lieutenant WILLIAMS and Sergeant GADLIKINA trained and instructed the other individual defendants related to the conduct described supra, witnessed and were aware of such conduct, and knew such to violate plaintiff POE's constitutional rights, yet failed to intervene, redress or remedy such conduct.

23. Upon information and belief, defendant P.O. ANDINO swore out a complaint against plaintiff POE, falsely charging her with of Obstructing Government Administration in the Second Degree (P.L. § 195.05).

24. Plaintiff POE was arraigned in court November 14, 2012 and her case was adjourned in contemplation of dismissal.

25. Upon information and belief, defendant POE was detained for approximately 30 hours.

26. Pursuant to the adjournment in contemplation of dismissal, plaintiff POE's case was dismissed and sealed on May 14, 2013.

27. As a result of the conduct described <u>supra</u>, plaintiff POE suffered mental and physical harms, some of which are believed to be permanent.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
<u>**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**</u>
(*Against all Defendants*)

28. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of her rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of her person, including false arrest, false imprisonment, and the use of excessive force; (b) freedom from unlawful entry into her home without a warrant, consent, or exigent circumstances; (c) freedom from searches and seizures of her home and property therein without a warrant, consent, or exigent circumstances; (d) freedom from unlawful and

unreasonable seizure and destruction of her property; and (e) freedom from deprivation of liberty without due process of law.

30. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(*Against Defendants Lieutenant WILLIAMS and Sergeant GADLIKINA*)

31. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. By failing to remedy the wrongs committed by their subordinates, in failing to properly train, screen, supervise, or discipline their subordinates, and by personally participating in and explicitly ordering the constitutional injuries set forth above, defendants Lieutenant WILLIAMS and Sergeant GADLIKINA, in their individual capacities caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

33. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM
### *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983
(*Against Defendant CITY OF NEW YORK*)

34. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

35. All of the acts and omissions by the named and unnamed individual defendants described above were carried out pursuant to overlapping policies and practices of the defendant CITY

which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

36. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

37. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD, all under the supervision of ranking officers of the NYPD.

38. The aforementioned customs, practices, procedures and rules of the City of New York and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Using excessive force on individuals;

    b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    d. Retaliating against officers who report police misconduct; and

    e. Failing to intervene to prevent the above-mentioned practices when a supervisor or other agent or employee of the NYPD reasonably could have prevented them.

39. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against defendant CITY and analogous prosecutions of police officers related to the above-stated customs and policies:

a. Tyler v. City of New York, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (in retaliation for speech protected by the First Amendment, two NYPD officers sweep the legs out from under an already-handcuffed arrestee, causing the top of his head to collide with the pavement, causing a substantial laceration which required nearly a dozen stitches and staples);

b. McKie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y.) (NYPD officers use pepper spray upon an individual who was under arrest, was prone and compliant with officers commands, and whose arm was pinned beneath his and the officers' combined weights during the entire use of force);

c. Gad Alla v. City of New York, 11-CV-892 (FB) (RLM) (E.D.N.Y.) (NYPD officer uses catastrophic force to the side of an arrestee's head, even though the arrestee was compliant and prone, and even though multiple officers had their hands on his back, controlling his movements);

d. Thompson v. City of New York, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, NYPD officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepper spray to his face without cause);

e. Zabala v. City of New York, 3771/2010 (Sup. Ct., Kings Co.) (NYPD officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered and was surrounded on all sides by police officers);

f. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon two arrestees even though they were both already handcuffed and compliant);

g. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon a compliant arrestee while he was already in handcuffs); and

h. King v. City of New York, 07-CV-4757 (FB) (JO) (E.D.N.Y.) (NYPD officer rear-cuffs compliant arrestee for possession of marijuana and places him prone on the pavement, then kicks him in the face and shoves his face into pavement).

40. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to discouraging police officers from reporting the corrupt or unlawful acts of other police officers, and/or discouraging officers from intervening to prevent same** are further evidenced, inter alia, by the following:

a. Lotorto v. City of New York, 10-CV-1223 (ILG) (JMA) (E.D.N.Y.) (police officers beat, arrest and destroy a video recording of a bystander who was recording an arrest occurring in public);

8

b. Long v. City of New York, 09-CV-9216 (AKH) (S.D.N.Y.); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer who purposefully swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force);

c. Colon v. City of New York, 09-CV-0008 (E.D.N.Y.) In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on Iqbal/Twombly grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

d. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

e. Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

f. Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicion less, racially-motivated stop-and-frisk of a group of Hispanic youth);

g. Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

h. Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for

  criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

 i. <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption"); and,

 j. <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department).

41. Furthermore, the existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct**, are further evidenced, <u>inter alia</u>, by the following:

 a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the

      past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[1]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, then-Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[2]

d. Regarding defendant CITY's tacit condoning and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a CITY agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[3] When it does, however, the Police Commissioner controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during then-Commissioner Raymond Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD simply dropped (i.e., closed without action or discipline) spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[4] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for

---

[1] Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

[2] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[3] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

[4] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

   more than 10% of the cases that the NYPD dropped in 2007 and accounted for more than 25% of cases dropped in 2008.[5]

42. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct**, are further evidenced, inter alia, by the following:

    a. Former New York County District Attorney Robert Morgenthau acknowledged that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b. In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c. Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

43. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, then-Commissioner Kelly.

44. The actions of the individual defendants resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They did so with the knowledge and approval of their supervisors, commanders and then-Commissioner Kelly who all: (i) tacitly accepted and encouraged a code of silence

---

[5]   Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

wherein police officers refused to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encouraged and, in the absence of video evidence blatantly exposing the officers' perjury, failed to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

45. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but not limited to, the constitutional rights enumerated in paragraph "29" above.

46. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of her rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

47. Defendant CITY is directly liable and responsible for the acts of the individual defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

48. Despite knowledge of such unlawful <u>de facto</u> policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including then-Commissioner Kelly, did not take steps to terminate these policies, practices and/or customs, did not discipline individuals who engaged in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and

statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

49. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff. Pursuant to the aforementioned CITY policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

50. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

51. The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well-settled and widespread customs and practices of the CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

52. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

## FOURTH CLAIM
## NEGLIGENCE
## <u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
### (*Against All Defendants*)

53. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

54. The individual defendants, individually and collectively, owed plaintiff a duty to ensure they had a legal basis to deprive her of her liberty as well as to use force against her person.

55. The individual defendants were aware of facts that should have led them to believe that they lacked a legal basis to detain plaintiff or to use physical force upon her.

56. The individual defendants breached their duty to plaintiff and thereby negligently caused, jointly and severally, injuries, emotional distress and damage to plaintiff, as set forth above.

57. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

58. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

59. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured as set forth above.

## FIFTH CLAIM
## ASSAULT AND BATTERY
## <u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
### (*Against All Defendants*)

60. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61. By the actions described above, and by all other touchings by defendants and other police officers during her unlawful detention, defendants did inflict assault and battery upon plaintiff.

62. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

63. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

64. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## <u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
### (*Against All Defendants*)

65. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

66. By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

67. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

68. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**SEVENTH CLAIM
FALSE ARREST AND FALSE IMPRISONMENT
<u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
(*Against All Defendants*)**

69. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

71. Defendants caused plaintiff to be falsely arrested and falsely imprisoned, illegally and <u>ab initio</u>, by unnecessarily and unreasonably prolonging her detention prior to arraignment.

72. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

73. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**EIGHTH CLAIM**
**CONVERSION**
**<u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>**
(*Against All Defendants*)

74. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

75. By confiscating and/or destroying plaintiff's property, and by intentionally and maliciously refusing to return such property to the plaintiff despite her unambiguous claim of right, and failure to compensate plaintiff for the property taken, the defendants have interfered, and are continuing to interfere, with plaintiff's property rights.

76. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the constitution and laws of New York.  The defendants, therefore, are liable for conversion for all properties confiscated from the plaintiff which have not been returned to her in an unharmed condition.

77. As a result of the foregoing, plaintiff has been deprived of the use and enjoyment of her properties without legal justification, resulting in costs, expenses, emotional anguish and other damages and injuries.

## **JURY DEMAND**

78. Plaintiff demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That she be compensated for violation of constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That she be awarded punitive damages against the individual defendants; and

c. That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:      New York, New York
            May 16, 2014

                                        Respectfully submitted,

                                        /s/
                               By:      _____
                                        Robert M. Quackenbush
                                        Rankin & Taylor, PLLC
                                        *Attorneys for the Plaintiff*
                                        11 Park Place, Suite 914
                                        New York, New York 10007
                                        Ph: 212-226-4507